Rollin A. Ransom (SBN 196126)
rransom@sidley.com
Eric B. Schwartz (SBN 266554)
eschwartz@sidley.com
Nicole M. Baade (SBN 335703)
nbaade@sidley.com
Jessica Joyce (SBN 353071)
jessie.joyce@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Ave., 44th Fl.
Los Angeles, CA 90071
Telephone: 213 896-6000
Facsimile: 213 896-6600

*Attorneys for Plaintiff*
GOLDEN GLOBES, LLC f/k/a
ELDRIDGE GLOBES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GOLDEN GLOBES, LLC f/k/a
ELDRIDGE GLOBES, LLC,

Plaintiff,

vs.

GOLDEN GLOBE FOUNDATION,

Defendant.

Case No. _______________

**COMPLAINT FOR:**

1. Trademark and Service Mark Infringement (15 U.S.C. § 1114);
2. Unfair Competition by False Designation of Origin (15 U.S.C. § 1125(a));
3. Statutory Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*); and
4. Common Law Trademark Infringement and Unfair Competition.

**DEMAND FOR JURY TRIAL**

Plaintiff Golden Globes, LLC f/k/a Eldridge Globes, LLC ("Plaintiff"), by and through its counsel of record, hereby brings this Complaint for trademark infringement and unfair competition against Defendant Golden Globe Foundation ("Defendant" or "GGF") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement and unfair competition arising from Defendant's unauthorized use of Plaintiff's federally registered GOLDEN GLOBE mark.

2. Plaintiff is the owner of the iconic GOLDEN GLOBE trademark—a registered federal mark associated worldwide with one of the entertainment industry's most celebrated awards shows.

3. Defendant has adopted and continued using the GOLDEN GLOBE mark as part of its corporate name and in connection with a broad array of activities, including hosting events, conducting auctions, awarding grants, publishing materials, and developing merchandise—activities that are confusingly similar to Plaintiff's business and have caused and threaten to continue to cause consumer confusion—without authorization from Plaintiff and over Plaintiff's express demand that Defendant cease such use.

4. On information and belief, Defendant's acts of infringement are directed and authorized by Raffi Boghosian ("Boghosian"), who is currently the President of the Board of Directors and the Interim Chief Executive Officer of Defendant.

5. The unauthorized use of the GOLDEN GLOBE mark by Defendant is causing and will continue to cause consumer confusion and irreparable harm to Plaintiff. Plaintiff accordingly brings this action to enjoin Defendant's infringing conduct and to recover the damages caused thereby.

## JURISDICTION AND VENUE

6. Plaintiff's claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and California common law.

7. This Court has subject matter jurisdiction over Plaintiff's federal trademark infringement and unfair competition claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(b). This Court has jurisdiction over the California law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). A substantial part of the events or omissions giving rise to the claims in this Complaint occurred within this judicial district. Plaintiff's and Defendant's principal places of business are located in this judicial district.

## THE PARTIES

9. Plaintiff Golden Globes, LLC (formerly known as Eldridge Globes, LLC) is a Delaware limited liability company with its principal place of business in Los Angeles, California. Plaintiff is the current owner of the Golden Globes brand, trademarks, and related intellectual property.

10. Defendant is a California non-profit corporation with its principal place of business at 650 North Robertson Boulevard, West Hollywood, California 90069.

## GENERAL ALLEGATIONS

### I. HFPA Members' Long History of Improperly Leveraging the Golden Globes Name

11. The Golden Globe Awards (also known as the "Golden Globes") is one of the most prestigious and widely recognized entertainment awards shows in the world. Founded by the Hollywood Foreign Press Association ("HFPA") in 1943, the first Golden Globes ceremony was held in January 1944. For more than eighty years, the mark GOLDEN GLOBE (the "GOLDEN GLOBE Mark") has been associated with excellence in the entertainment industry, including film, television,

and streaming.

12. While the Golden Globes name holds widely recognized prestige, the individual members of the HFPA long faced criticisms from a bevy of sources, principally relating to their self-dealing and discrimination.

13. Throughout the 2010s, for example, the HFPA was rocked by multiple scandals, including allegations relating to sexual assault, sexism and racism, lack of diversity, lax or nonexistent membership criteria, and bribery and payola schemes.

14. In 2011, the HFPA was roiled by allegations (though not for the first, or the last, time) that HFPA members accepted lavish trips and other benefits in exchange for favorable voting, in what was variously described as a bribery or "payola" scheme. The HFPA's own longtime publicist, Michael Russell, filed a lawsuit alleging that HFPA members accepted money, vacations, gifts, and other perks "provided by studios and producers in exchange for support or votes in nominating or awarding a particular film." The lawsuit further alleged that HFPA members accepted "payment from studios and producers for representing films and lobbying other HFPA members for Golden Globes nominations and awards for these films."

15. Later in the decade, a prominent actor went public with accusations that he had been sexually assaulted by the HFPA's chairman at an HFPA event.

16. In 2019, the HFPA was denounced for sexism in its persisting failure to recognize female directors.

17. These events culminated in February 2021, when the HFPA was the subject of two Los Angeles Times articles reporting on the HFPA's lack of racial diversity and questioning the ethics and legitimacy of the HFPA. The articles flagged that the HFPA had "no Black members" and highlighted "persist[ing]" questions regarding the "qualifications of [the HFPA's] members," and exposed the prevalent self-enrichment by those members at the HFPA's expense, behavior that

threatened to compromise the HFPA's tax-exempt status as a charitable organization.

18. In light of these and other revelations, the HFPA's longtime broadcast partner for the Golden Globes, NBC, announced in May 2021 that it would not air the Golden Globes in 2022, amounting to an existential threat to the HFPA and the Golden Globes (in light of, among other things, the loss of the substantial licensing fee paid by NBC). That decision was made by NBC as a direct response to the HFPA's scandal.

19. Multiple studios, industry executives, and leading actors and actresses also announced that they would boycott the Golden Globes and otherwise spoke out against the HFPA. In the face of this widespread industry backlash, the HFPA elected to pursue a sale of the Golden Globes and all related assets.

**II. Plaintiff's GOLDEN GLOBE Mark and the Golden Globe Awards**

20. Pursuant to an Asset Purchase Agreement, dated as of September 15, 2022, entered into by and among (i) Plaintiff; (ii) the HFPA; (iii) the Hollywood Foreign Press Association Charitable Trust; and (iv) Eldridge Industries, LLC (as amended, the "Purchase Agreement"), Plaintiff acquired all right, title, and interest in and to, among other assets, the "Golden Globes IP," including without limitation "the 'Golden Globes' and 'Golden Globe Awards' name and logo and other Trademarks related to the Golden Globes." Purchase Agm't. §§ 1.1, 2.1(a).

21. The Purchase Agreement transaction closed in June 2023, at which point Plaintiff became the exclusive owner of the GOLDEN GLOBE Mark and all related intellectual property.

22. Plaintiff owns multiple United States federal trademark registrations for the GOLDEN GLOBE Mark, including without limitation Registration Nos. 2,424,703, 2,381,145, and 2,422,897. These registrations cover the GOLDEN GLOBE Mark in connection with entertainment awards, ceremonies, and related

goods and services. Pursuant to 15 U.S.C. § 1065, Plaintiff's rights to use the GOLDEN GLOBE Mark in connection with such services are incontestable.

**III. Creation of the Golden Globe Foundation and Its Unauthorized Use of the GOLDEN GLOBE Mark**

23. In connection with the overall transaction contemplated by the Purchase Agreement, GGF was created in May 2023 as a 501(c)(4) entity to carry on certain charitable and related activities of the HFPA and the Hollywood Foreign Press Association Charitable Trust.

24. At the time of GGF's formation in connection with the June 2023 closing of the Purchase Agreement transaction, Plaintiff and GGF had discussed whether, and if so on what terms, Plaintiff may be willing to grant to GGF a license to use the GOLDEN GLOBE Mark as part of GGF's name and as a trademark and service mark in connection with certain activities by GGF. Those discussions ultimately failed to produce an agreement on acceptable terms.

25. Despite failing to reach an agreement and GGF thus having no license or authorization, GGF has used the GOLDEN GLOBE Mark in a wide variety of ways, including: (a) as part of its corporate name, "Golden Globe Foundation"; (b) as a trademark and service mark in connection with grants, dinners, auctions, and other events; (c) in promotional and advertising materials; and (d) on its website and in press releases and other communications. GGF's use of the GOLDEN GLOBE Mark is confusingly similar to the business owned and operated by Plaintiff, and GGF's continued use of the GOLDEN GLOBE Mark without a license has caused and threatens to continue to cause consumer confusion.

26. On information and belief, GGF's activities and use of the GOLDEN GLOBE Mark have also expanded well beyond its stated charitable mission, to include hosting events featuring the GOLDEN GLOBE Mark, developing "Golden Globe" merchandise, and engaging in other commercial and quasi-commercial

activities that are also confusingly similar to the business owned and operated by Plaintiff.

27. GGF's use of the GOLDEN GLOBE Mark in connection with these activities is likely to cause—and on information and belief has caused—consumers to believe that GGF's activities are sponsored by, affiliated with, or approved by Plaintiff, when they are not. Because GGF and its members (most or all of whom are current or former HFPA members) use the identical GOLDEN GLOBE Mark in connection with entertainment-related events similar to those associated with Plaintiff's business, the likelihood of consumer confusion is high.

28. Through decades of use and promotion, the GOLDEN GLOBE Mark has achieved a remarkable degree of public recognition and goodwill. The GOLDEN GLOBE Mark is among the most famous and valuable entertainment-industry trademarks in the world, and the goodwill associated with it is an invaluable asset of Plaintiff.

29. GGF itself has expressly acknowledged Plaintiff's ownership of the GOLDEN GLOBE Mark on its own website, which states that "Golden Globe(s)®, Cecil B. Demille® and Golden Globes® Statuette design mark are the registered trademarks and service marks and the Golden Globe® statuette the copyrighted property, of Golden Globes, LLC."[1]

## IV. Plaintiff's Demands and GGF's Refusal to Comply

30. On August 7, 2025, Plaintiff's counsel sent a formal cease and desist letter to GGF demanding that GGF "immediately and permanently cease and desist from any further use of the GOLDEN GLOBE mark, including without limitation as part of GGF's name and as a trademark or service mark." Plaintiff also stated its willingness to discuss a brief transition period to permit GGF to select and adopt a new name and mark.

[1] Golden Globe Foundation, https://ggfdn.org/ (last visited September 30, 2026).

31. On August 22, 2025, GGF's counsel responded to Plaintiff's cease and desist letter, declining to comply with Plaintiff's demands. GGF made clear that it would not voluntarily cease its unauthorized use of Plaintiff's GOLDEN GLOBE Mark.

**V. Negotiations Break Down after Boghosian Is Elected Board President and Assumes Role of Interim Chief Executive Officer**

32. Following the parties' exchange of correspondence in August 2025, in an effort to avoid litigation, Plaintiff endeavored to negotiate a license for use of Plaintiff's GOLDEN GLOBE Mark with GGF. Although the parties appeared to be making progress, the negotiations abruptly ended in July 2026, when GGF elected Boghosian as the new President of its Board of Directors.

33. On information and belief, shortly after Boghosian's election, and acting under Boghosian's leadership in what has been characterized in press reports as a "coup," GGF terminated Gregory Goeckner, who had served as GGF's Chief Executive Officer since its formation. Consistent with the press characterization, following Goeckner's termination, Boghosian assumed the role of "Interim Chief Executive Officer," in addition to retaining his title as Board President. On information and belief, acting under Boghosian's leadership, GGF also terminated the outside counsel who had been negotiating with Plaintiff to obtain a license for use of the GOLDEN GLOBE Mark on GGF's behalf, effectively abandoning those negotiations and signaling GGF's intent to continue using the GOLDEN GLOBE Mark without authorization.

34. On information and belief, rather than discontinuing GGF's unauthorized use of Plaintiff's GOLDEN GLOBE Mark, Boghosian directed and authorized the *expansion* of GGF's infringement of the GOLDEN GLOBE Mark, including the development of "Golden Globe merchandise." On information and belief, Boghosian is personally and actively involved in these ongoing and expanding acts of infringement, both in directing and authorizing GGF and its

personnel to undertake such acts and in participating in communications and activities that are designed and likely to confuse the consuming public as to the source and origin of the goods or services offered by GGF, the affiliation, connection, and association of Plaintiff with GGF, and Plaintiff's sponsorship, approval, and/or control of the services or commercial activities offered by GGF.

35. On information and belief, GGF's unauthorized and expanding use of the GOLDEN GLOBE Mark is part of a broader pattern of coordination between GGF and the HFPA directed against Plaintiff and its affiliates. In July 2026, the HFPA filed a federal lawsuit naming as defendants GGF, Penske Media Corporation (an indirect owner of Plaintiff), and others. On information and belief, GGF and the HFPA have since entered into or are in the process of finalizing a settlement of the HFPA's claims against GGF that would result in GGF transferring charitable funds to the HFPA. On information and belief, the HFPA's inclusion of GGF as a defendant was a pretext designed to facilitate this transfer, and the settlement is intended to redirect charitable funds to finance the HFPA's lawsuit and other private disputes against Plaintiff. This coordination between GGF and the HFPA further demonstrates that GGF's continued use of the GOLDEN GLOBE Mark is not undertaken in good faith, but rather as part of a concerted effort to trade on the goodwill of Plaintiff's mark while acting in alignment with the HFPA against Plaintiff's interests.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Trademark and Service Mark Infringement – 15 U.S.C. § 1114)**

36. Plaintiff repeats, realleges, and incorporates herein by reference each of the allegations contained in Paragraphs 1 through 35 above, inclusive, as though fully set forth herein.

37. Plaintiff owns multiple United States federal trademark registrations for the GOLDEN GLOBE Mark, including without limitation Registration Nos. 2,424,703, 2,381,145, and 2,422,897.

38. Plaintiff or its predecessors first used the GOLDEN GLOBE Mark in connection with entertainment awards, ceremonies, and related goods and services at least as early as 1944, and such use has continued through the present. The registrations for the GOLDEN GLOBE Mark identified above are incontestable under section 15 of the Lanham Act, 15 U.S.C. § 1065, and constitute conclusive evidence of Plaintiff's exclusive right to use the GOLDEN GLOBE Mark in connection with entertainment awards, ceremonies, and related goods and services.

39. As a result of the long period of use and extensive advertisement and sale of services and goods under the GOLDEN GLOBE Mark, members of the public recognize the GOLDEN GLOBE Mark as an exclusive source identifier for entertainment awards, ceremonies, and related goods and services originating from Plaintiff.

40. Defendant's use of the GOLDEN GLOBE Mark constitutes use in commerce of a reproduction, counterfeit, copy, or colorable imitation of the GOLDEN GLOBE Mark that is likely to cause confusion or mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41. Defendant's conduct constitutes federal trademark infringement and has caused and, unless restrained and enjoined by this Court, will continue to cause a likelihood of consumer confusion, mistake, and deception.

42. On information and belief, Defendant is committing the acts complained of above with full knowledge that its acts are unlawful.

43. Defendant has caused and, unless restrained by this Court, will continue to cause irreparable harm, damage, and injury to Plaintiff, including but not limited to injury to Plaintiff's good will and business reputation. On information and belief, Defendant's conduct is willful.

44. Plaintiff has no adequate remedy at law, and Plaintiff is being irreparably damaged by Defendant's acts in violation of the Lanham Act, entitling Plaintiff to injunctive relief pursuant to 15 U.S.C. § 1116.

45. In light of Defendant's conduct, this constitutes an exceptional case within the meaning of the Lanham Act, 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Unfair Competition by False Designation of Origin – 15 U.S.C. § 1125(a))

46. Plaintiff repeats, realleges, and incorporates herein by reference each of the allegations contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

47. Defendant's unauthorized use of the GOLDEN GLOBE Mark is causing and will continue to cause a likelihood of confusion, mistake, and deception with respect to: (a) the source and origin of the services offered by GGF; (b) the affiliation, connection, and association of Defendant with Plaintiff; and (c) Plaintiff's sponsorship, approval, and/or control of the services offered by Defendant, all in violation of the Lanham Act, 15 U.S.C. § 1125(a).

48. On information and belief, Defendant is committing the acts complained of above with full knowledge that its acts are unlawful.

49. Defendant has caused and, unless restrained by this Court, will continue to cause irreparable harm, damage, and injury to Plaintiff, including but not limited to injury to Plaintiff's good will and business reputation. On information and belief, Defendant's conduct is willful.

50. Plaintiff has no adequate remedy at law, and Plaintiff is being irreparably damaged by Defendant's acts in violation of the Lanham Act, entitling Plaintiff to injunctive relief pursuant to 15 U.S.C. § 1116.

51. In light of Defendant's conduct, this constitutes an exceptional case within the meaning of the Lanham Act, 15 U.S.C. § 1117.

**THIRD CAUSE OF ACTION**

**(Statutory Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq.*)**

52. Plaintiff repeats, realleges, and incorporates herein by reference each of the allegations contained in Paragraphs 1 through 51 above, inclusive, as though fully set forth herein.

53. Defendant's conduct as alleged herein constitutes an unlawful, unfair, and/or fraudulent business act or practice, in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

54. On information and belief, Defendant is committing the acts complained of above with full knowledge that its acts are unlawful.

55. Defendant has caused and, unless restrained by this Court, will continue to cause irreparable harm, damage, and injury to Plaintiff, including but not limited to injury to Plaintiff's good will and business reputation. On information and belief, Defendant's conduct is willful.

56. Plaintiff has no adequate remedy at law, and Plaintiff is being irreparably damaged by Defendant's acts in violation of California's Unfair Competition Law, entitling Plaintiff to injunctive relief.

**FOURTH CAUSE OF ACTION**

**(Common Law Unfair Competition and Trademark Infringement)**

57. Plaintiff repeats, realleges, and incorporates herein by reference each of the allegations contained in Paragraphs 1 through 56 above, inclusive, as though fully set forth herein.

58. Defendant's conduct as alleged herein constitutes unfair competition and trademark infringement under the common law of the State of California.

59. On information and belief, Defendant is committing the acts complained of above with full knowledge that its acts are unlawful.

60. Defendant has caused and, unless restrained by this Court, will continue to cause irreparable harm, damage, and injury to Plaintiff, including but not limited

to injury to Plaintiff's good will and business reputation. On information and belief, Defendant's conduct is willful.

61. Plaintiff has no adequate remedy at law, and Plaintiff is being irreparably damaged by Defendant's acts in violation of California common law, entitling Plaintiff to injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor against Defendant on all causes of action in its Complaint, and further requests the following relief:

(1) Pursuant to 15 U.S.C. § 1116(a), a preliminary and permanent injunction enjoining and restraining Defendant, its agents, servants, members, employees, and attorneys, and all other persons in active concert or participation with one or more of them, and each of them, from:

(a) Using the GOLDEN GLOBE Mark, or any reproduction, copy or colorable imitation or variation of it in connection with advertising, distribution, sale, or offering for sale of any of Defendant's products and/or services; and

(b) Performing any other act that is likely to lead the public to believe that goods or services offered, sold, or otherwise distributed by Defendant are in any manner licensed, sponsored, approved, or authorized by Plaintiff;

(2) An award of Defendant's profits and Plaintiff's actual damages, trebled, including but not limited to lost sales, lost profits, and diminished goodwill, pursuant to 15 U.S.C. § 1117(a);

(3) An award of the costs of this action, including reasonable attorneys' fees; and

(4) Such other relief as this Court may deem just and equitable.

DATED: September 30, 2026

Respectfully Submitted,

SIDLEY AUSTIN LLP

By: _*Rollin A. Ransom*_
Rollin A. Ransom
Eric B. Schwartz
Nicole M. Baade
Jessica Joyce

*Attorneys for Plaintiff*
GOLDEN GLOBES, LLC f/k/a
ELDRIDGE GLOBES, LLC

**DEMAND FOR JURY TRIAL**

Pursuant to Local Rule 38-1 and Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Golden Globes, LLC f/k/a Eldridge Globes, LLC hereby demands a trial by jury.

DATED: September 30, 2026

Respectfully Submitted

SIDLEY AUSTIN LLP

By: *Rollin A. Ransom*
Rollin A. Ransom
Eric B. Schwartz
Nicole M. Baade
Jessica Joyce

*Attorneys for Plaintiff*
GOLDEN GLOBES, LLC f/k/a
ELDRIDGE GLOBES, LLC